UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JEAN RENNE CARTER,<br><br>                              Plaintiff,<br><br>     v.<br><br>MICHAEL J. ASTRUE, Commissioner of<br>Social Security Administration,<br><br>                              Defendant. | CASE NO.  C10-5363-RBL-JRC<br><br>REPORT AND RECOMMENDATION<br><br><br>Noted for January 7, 2010 |

This matter has been referred to Magistrate Judge J. Richard Creatura pursuant to 28 U.S.C. § 636(b)(1) and Local Magistrates Rule MJR 4(a)(4); and, as authorized by <u>Mathews, Secretary of  H.E.W. v. Weber</u>, 423 U.S. 261, 271-72 (1976).  This matter has been fully briefed. (<u>See</u> ECF Nos. 12, 13, 14.) This court heard oral argument on November 30, 2010.

After considering and reviewing the record, the undersigned finds that the ALJ erred in concluding that plaintiff engaged in substantial gainful activity without explaining why "significant probative evidence" was rejected and without an explicit conclusion regarding plaintiff's credibility. The undersigned recommends that this matter be remanded for further consideration by the Administration.

REPORT AND RECOMMENDATION
Page 1

BACKGROUND

Jean Renne Carter, plaintiff, was born in 1953, and was 51 on her alleged onset date. (Tr. 57, 69.) She has a high school education, and a long history of clerical/reception work. (Tr. 102.) Plaintiff began managing apartments in May 2006. (Tr. 15, 79, 102, 119, 157.) Plaintiff was paid a salary as the manager of the apartments, earning around $500 to 600 per month. (Tr. 79, 102, 120.) In addition, she and her husband were allowed to stay at the apartments for free, which was worth $725 per month. (Tr. 157.) The issue in this case is whether the $725 per month rent is income to plaintiff or to her husband, Mr. Carter.

Plaintiff testified that she and her husband lived at the apartment complex. (Tr. 19-21.) She worked from home, answering the telephone and recording rent payments. (Tr. 19-20.) She also arranged by telephone to have apartments cleaned when they were vacated. (Tr. 20.) In her Work History Report she indicated that she assisted tenants with problems by writing up work orders and taking rent. (Tr. 120.)

According to the record, plaintiff's husband also had duties at the apartments, including showing the vacant apartments. (Tr. 21.) Rick Underwood, the general manager of owner T&K Properties, wrote a letter indicating that plaintiff's husband assisted plaintiff with the duties required to manage the apartments and that he also did maintenance. (Tr. 157.) Lynn Harris, the office manager of T&K Properties, stated in a letter that "Mr. Carter also works for T&K Properties and does the maintenance on the properties." (Tr. 158.) Mr. Carter testified at the hearing. (Tr. 22-30.) He testified that he worked as a foster care skills trainer thirty to thirty-five hours per week, "[a]nd then I come home and do what I have to do around." (Tr. 22.) A report of hours from 2006 to 2008 indicates that plaintiff and Mr. Carter worked at the apartments a similar number of hours each quarter. (Tr. 159-69.)

Plaintiff initially reported that she received the $725 rent per month, since this amount was reported by the employer as plaintiff's income. (Tr. 157.) However, plaintiff contends that she was not aware that the $725 rent amount was being treated as income to her. (Tr. 26.) According to plaintiff, when she became aware of this fact, T&K Properties amended her earnings record so that the rent amount was attributed to Mr. Carter rather than to plaintiff. (Tr. 157-69.) The General Manager explained that plaintiff was never given any notice that the $725 rent amount would be reported as her income. (Tr. 157.) Mr. Underwood indicated that because Mr. Carter assisted with management duties and did maintenance, the Tax and Wage Report was being amended to attribute the rent payment to Mr. Carter rather than to plaintiff. (Tr. 157.) Office manager, Lynn Harris, indicated "these amounts were put in Mrs. Carter's name and should have been put in Mr. Carter's name." (Tr. 158.) Plaintiff testified that she was paid a salary for the work she did, about $505 per month, and that her husband was provided with free rent, which was worth $725 per month. (Tr. 21.)

The DISCO DIB Insured Status Report and the FICA earnings report indicate that plaintiff's earnings in 2006 were $5,958.65 and her earnings in 2007 were $8,507.65. (Tr. 70, 75.) According to corrected amounts in plaintiff's Amended Tax & Wage Reports, plaintiff earned $8,803.65 in 2008. (Tr. 15, 166-69.) However, according to plaintiff's quarterly earnings reports, plaintiff earned $4,552.00 in the fourth quarter of 2006; $17,207.00 in 2007; and, $8,995.00 through the first half of 2008. (Tr. 76.) This inconsistency in the record regarding plaintiff's income results from the $725 per month of free rent being included in plaintiff's quarterly earnings reports as plaintiff's income, while this $725 per month is no longer reflected in plaintiff's DISCO DIB Insured Status Report and the FICA earnings report, nor is it reflected currently as correct in plaintiff's Amended Tax & Wage Reports. (Tr. 15, 70, 75, 166-69.)

PROCEDURAL HISTORY

On August 17, 2006, plaintiff filed applications for supplemental security income and disability insurance benefits, and a period of disability. (Tr. 13, 31-34, 57-59.) Plaintiff alleged that she became unable to work on November 30, 2004, due to the effects of multiple impairments. (Tr. 13, 101.)

On June 18, 2009, the ALJ issued a decision. (Tr. 13-16.) The ALJ found that plaintiff met the insured status requirement through June 30, 2010; however, also found that plaintiff had not been under a disability as defined in the Act from her alleged onset date of November 30, 2004, through the date of the decision. (Tr. 15-16, Findings 1, 4.) Specifically, the ALJ found that plaintiff was not disabled because her work as an apartment manager from May, 2006 through the date of the hearing, was substantial gainful activity. (Tr. 15.) His rationale for this finding includes the following:

> Additionally, the claimant testified that since May 2006, she has been working as an apartment manager of 33 rentals. The claimant testified that she answers the phone, collects rent, records the rent once a month, and makes arrangements for apartment cleaning. The claimant testified that her husband performs most of the apartment manager duties. However, the claimant's earnings record shows $5,958.65 for 2006, $8,507.65 for 2007, and $8,803.65 for 2008 (Exhibit 3D). At the hearing, the claimant testified that she is paid about $505 in monthly earnings and receives free housing at a value of $725 in monthly rent. (See also Exhibits 1E, 6E, 12E.2).

(Tr. 15, citing Tr. 78-87, 119-26, 157.) The Appeals Council denied plaintiff's request for review (Tr. 1-3), thereby making the ALJ's decision final and subject to judicial review. See 20 C.F.R. § 404.981.

STANDARD OF REVIEW

Plaintiff bears the burden of proving disability within the meaning of the Social Security Act (hereinafter "the Act"). Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (*citing* Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995)). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment "which can be expected to result in death or which has lasted, or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Plaintiff is disabled under the Act only if plaintiff's impairments are of such severity that plaintiff is unable to do previous work, and cannot, considering plaintiff's age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); cf. Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Social Security Administration has established a five-part sequential evaluation process in order to determine whether or not an individual is disabled as defined under the Act. 20 C.F.R. §§ 416.920(a)(4), 404.1520; see also Bowen v. Yuckert, 482 U.S. 137, 140 (1987). The first step is consideration of claimant's work activity, if any. 20 C.F.R. §§ 404.1520(a)(4). If the claimant is engaged in substantial gainful activity, she will be found not disabled. 42 U.S.C. § 423(d) (1) (A); Andrews v. Shalala, 53 F.3d 1035, 1040 (9th Cir. 1995); 20 C.F.R. §§ 416.920(a)(4)(i), 416.920(b), 404.1520(a)(4)(i). Disability benefits, therefore, will be denied. See Bowen, 482 U.S. at 140.

"Substantial gainful activity" is activity that is both "substantial" and "gainful." 20 C.F.R. § 416.972. "Substantial work activity" involves "significant physical or mental

REPORT AND RECOMMENDATION
Page 5

activities" and may include part-time work and work that pays less or involves fewer responsibilities than previous work.  20 C.F.R. § 416.972(a).  "Gainful" work activity is work activity that is "usually done for pay or profit."  20 C.F.R. § 416.972(b).  It is the claimant's burden to show that she is not engaged in substantial gainful activity. See Sanchez v. Secretary of Health & Human Services, 812 F.2d 509, 511 (9th Cir. 1987).

Earnings may show that an individual is engaged in substantial gainful activity. 20 C.F.R. § 416.974(a)(1). An individual earning more than a certain amount each month is presumed to be engaged in substantial gainful activity.  Katz v. Secretary of Health & Human Services, 972 F.2d 290, 293 (9th Cir. 1992)(earnings beyond a certain guideline create a rebuttable presumption of substantial gainful activity) (*citing* Keyes v. Sullivan, 894 F.2d 1053, 1056 (9th Cir. 1990)); 20 C.F.R. §§ 404.1574(b)(2), 416.974(b)(2). Average monthly earnings that presumptively show that a claimant engaged in substantial gainful activity were $860 in 2006; $900 in 2007; and, $940 in 2008. 20 C.F.R. §§ 404.1574(b)(2), 416.974(b)(2); (see also Response, ECF No. 13, p. 4; Reply, ECF No. 14, p. 2.) Part-time work that pays less than full-time work still can be substantial gainful activity.  Katz, 972 F.2d at 292 (*citing* Keyes, 894 F.2d at 1056); 20 C.F.R. § 416.972(a). An individual's earnings will be used in order to determine whether or not the claimant has been engaged in substantial gainful activity "unless we have information from [claimant], [claimant's] employer, or others that shows that we should not count all of [claimant's] earnings." 20 C.F.R. § 404.1574(a)(1).

Pursuant to 42 U.S.C. § 405(g), this court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing* Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1999)). "Substantial evidence" is

REPORT AND RECOMMENDATION
Page 6

more than a scintilla, is less than a preponderance, and is such "'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989) (*quoting* Davis v. Heckler, 868 F.2d 323, 325-26 (9th Cir. 1989)); see also Richardson v. Perales, 402 U.S. 389, 401 (1971).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995) (*citing* Magallenes, 881 F.2d at 750). It is not the job of the court to reweigh the evidence: If the evidence is susceptible to more than one rational interpretation, including one that supports the decision, the Commissioner's conclusion must be upheld. Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002) (*citing* Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)); cf. United States v. Harvey, 661 F.2d 767, 772 (9th Cir. 1981) (*citing* Chisholm Bros. Farm Equipment Co. v. International Harvester Co., 498 F.2d 1137, 1140 (9th Cir. 1974)). However, the Commissioner "may not reject 'significant probative evidence' without explanation." Flores v. Shalala, 49 F.3d 562, 570-71 (9th Cir. 1995) (*quoting* Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir. 1984) (*quoting* Cotter v. Harris, 642 F.2d 700, 706 (3d Cir. 1981))). The "ALJ's written decision must state reasons for disregarding [such] evidence." Flores, 49 F.3d at 571.

Similarly, the "circuit courts have consistently recognized the need for full and detailed findings of facts" essential to the conclusions. Lewin v. Schweiker, 654 F.2d 631, 634 (9th Cir. 1981). This "rule has been applied to credibility determinations and the courts have consistently required that there be an explicit finding . . . . whenever the claimant's credibility is a critical factor" in the decision. Lewin, 654 F.2d at 635. In Lewin, the Ninth Circuit concluded that "[b]ecause the ALJ's decision neither expressly discredits [claimant's] testimony nor articulates

any reason for questioning her credibility, and fails to indicate the amount of weight given to various items of evidence, it cannot stand." Id.

## DISCUSSION

In this case, the ALJ was faced with an inconsistent earnings record. While the DISCO DIB Insured Status Report and the FICA earnings report, along with plaintiff's Amended Tax & Wage Reports, indicate that plaintiff's income did not include $725 per month in free rent (Tr. 70, 75, 166-69), plaintiff's quarterly earnings reports indicate that the $725 per month of free rent was included as plaintiff's income. (Tr. 76.)

The record includes plaintiff's testimony that she did not know that this $725 per month for rent was being reported as her income, and that it should have been reported as her husband's income. (Tr. 21, 23-26.) The record also includes two letters. The first letter is from the General Manager of T&K Properties, who explained that because plaintiff's husband assisted with management duties and did maintenance, the Tax and Wage Report was being amended to attribute the rent payment to him rather than to plaintiff. (Tr. 157.) The record also includes a letter from the office manager, who indicated that "these amounts were put in Mrs. Carter's name and should have been put in Mr. Carter's name." (Tr. 158.)

It is not explicit within the written decision of the ALJ which evidence is being relied upon. The ALJ finds that "the claimant's earnings record shows $5,958.65 for 2006, $8,507.65 for 2007, and $8,803.65 for 2008". (Tr. 15.) This finding includes the corrected income numbers, which do not include the $725 per month of free rent, and for this finding the ALJ cites plaintiff's DISCO DIB Insured Status Report and the FICA earnings report. (Tr. 70, 75.) These amounts, if accepted, would demonstrate an average monthly earning below the amounts presumptively

REPORT AND RECOMMENDATION
Page 8

considered "substantial gainful activity" per the applicable regulations. 20 C.F.R. §§ 404.1574(b)(2), 416.974(b)(2); (see also Response, ECF No. 13, p. 4; Reply, ECF No. 14, p. 2.)

However, next, the ALJ appears to imply that plaintiff testified that she "receives free housing at a value of $725 in monthly rent." (Tr. 15, 76.) The ALJ then concludes that "claimant has engaged in substantial gainful activity since August 2005." (Id.)

From the ALJ's written decision, it is unclear why the ALJ concluded that plaintiff has engaged in substantial gainful activity. The ALJ appears to be discrediting the testimony of plaintiff (Tr. 21, 23-26), and relying upon plaintiff's quarterly earnings reports (Tr. 76), which indicate that the $725 per month of free rent was included as plaintiff's income. The ALJ also appears to be disregarding plaintiff's DISCO DIB Insured Status Report and the FICA earnings report, along with plaintiff's Amended Tax & Wage Reports (Tr. 70, 75, 166-69), as well as rejecting the evidence of letters by both T & K Properties general manager and office manager (Tr. 157-58). All of this evidence supports plaintiff's testimony that her earnings should not include the free rent. However, these are assumptions, as the ALJ has not specified within his written decision upon which evidence he relies and which evidence he has rejected.

This court concludes that the evidence the ALJ appears to have rejected is significant and probative and is consistent with plaintiff's testimony. (See Tr. 21, 23-36, 70, 75, 166-69.) If plaintiff's testimony is credible, then the $725 per month free rent was never intended to be her income. If plaintiff's testimony is not credible, then the ALJ should have provided full and detailed findings of facts essential to the conclusions. See Lewin v. Schweiker, 654 F.2d 631, 634-35 (9th Cir. 1981).

Like the decision by the ALJ in <u>Lewin</u>, "[b]ecause the ALJ's decision neither expressly discredits [claimant's] testimony nor articulates any reason for questioning her credibility, and fails to indicate the amount of weight given to various items of evidence, it cannot stand." <u>Lewin</u>, 654 F.2d at 635.

Although plaintiff requests that the court reverse the Commissioner's decision, and remand for further proceedings beginning at step two, such relief is inappropriate. As previously discussed, the decision at step one in this case appears to require a determination regarding credibility. <u>See</u> <u>supra</u>, pp. 8-9. "The ALJ is responsible for determining credibility . . . . and for resolving ambiguities." <u>Andrews</u>, 53 F.3d at 1039.  It is not the job of the court to reweigh the evidence. <u>See</u> <u>Thomas</u>, 278 F.3d at 954. Therefore, the court should remand the matter to the Administration for further consideration, beginning at step one.

CONCLUSION

Based on the foregoing, the court should remand the matter to the Administration for further consideration. On remand, the Administration should consider the evidence regarding whether or not plaintiff engaged in substantial gainful activity. If the Administration concludes that she has, the written decision should include an explanation as to why the "significant probative evidence" that the free housing valued at $725 per month was income of plaintiff's husband, and not of plaintiff, is rejected. The written decision should include explicit reference to the evidence that is being relied upon.  If appropriate, a new hearing should be conducted.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections.  <u>See also</u> Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of de novo

review by the district judge. See 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on January 7**,** 2010, as noted in the caption.

    Dated this 6th day of December, 2010.

*/s/ J. Richard Creatura*

J. Richard Creatura
United States Magistrate Judge

REPORT AND RECOMMENDATION
Page 11